Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiffs
Rebecca Padilla and Kimberly Owens

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA PADILLA and KIMBERLY OWENS, individually, and on behalf of a class of similarly situated individuals,<br><br>       Plaintiffs,<br><br>      v.<br><br>THE WHITEWAVE FOODS COMPANY dba WHITEWAVE SERVICES, INC., a Delaware corporation; DANONE US, LLC, a Delaware limited liability company; and DANONE NORTH AMERICA, LLC, a Delaware limited liability company,<br><br>       Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1) Violations of California's Consumers Legal Remedies Act<br>2) Violations of Unfair Competition Law, California Business & Professions Code § 17500 *et seq*.<br>3) Violations of Unfair Competition Law, California Business & Professions Code § 17200 *et seq*.<br>4) Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

### INTRODUCTION

1.     Plaintiffs Rebecca Padilla and Kimberly Owens ("Plaintiffs") bring this action on behalf of themselves and on behalf of all others similarly situated, against Defendants The WhiteWave Foods Co. dba WhiteWave Services, Inc. ("WhiteWave"), Danone US, LLC, and Danone North America, LLC ("Defendants"), based on Defendants' misleading business practices with respect to the packaging and sale of Vega protein and meal replacement powders[1] ("Vega Food and Protein Powders").

2.     At all relevant times, and as depicted in the photographs below, Defendants have packaged and sold the Vega Food and Protein Powders in opaque packaging that conceals from consumers the amount of product actually contained therein. The Vega Food and Protein Powders are advertised and sold in sealed, opaque plastic containers significantly comprised of non-functional empty space, as detailed below. This packaging prevents the consumer from directly seeing or handling the product and leads reasonable consumers to believe that the package contains significantly more product than it actually does.

3.     Defendants' practice of substantially under-filling its Vega Food and Protein Powders' opaque containers with powder creates non-functional slack fill, in violation of state and federal laws. The use of non-functional slack fill allows Defendants to lower their costs by deceiving customers into paying a higher price for more product than they truly receive. As a result, Defendants have realized sizable profits to the detriment of consumers.

4.     Plaintiffs and other consumers have reasonably relied on

---

[1] On information and belief, the Vega Food and Protein Powders include, without limitation: Vega One Organic All-in-One Shake, Vega Sport Premium Protein, Vega Protein & Greens, Vega One All-in-One Shake, Vega Clean Protein, Vega Sport Protein, and Vega Essentials Shake.

CLASS ACTION COMPLAINT

Defendants' deceptive packaging in purchasing the Vega Food and Protein Powders.  If Plaintiffs and other consumers had known the actual amount of protein or meal replacement powder contained in the packaging, they would not have purchased the Vega Food and Protein Powders or would have paid less for them.  Therefore, Plaintiffs and other consumers have suffered injury-in-fact as a result of Defendants' deceptive practices, including, but not limited to, out-of-pocket costs incurred in purchasing the overvalued Vega Food and Protein Powders.

## PARTIES

**Plaintiff Rebecca Padilla**

5.      Plaintiff Rebecca Padilla is a California citizen who resides in Long Beach, California.  In or around late-July 2018, Plaintiff Padilla purchased a container of chocolate-flavored Vega Protein & Greens powder from a Target store, a Vega authorized retailer, located in Long Beach, California, within Los Angeles County.

6.      Plaintiff Padilla purchased the Vega Protein & Greens powder in reliance on the product's packaging, which made it appear that she was purchasing a substantially-filled container of protein powder, as indicated by the size of the container.  Because of its opaque packaging, the contents of the container were not visible to Plaintiff at the time of purchase and Plaintiff had no reason to believe that the container was not entirely full, or at least substantially full, of the Vega powder.  However, upon opening the container after purchase, Plaintiff was shocked and upset to find that the Vega container was predominantly comprised of empty space and the Vega powder, including the serving scooper, only filled approximately one-third of the container's capacity.

7.      Plaintiff Padilla purchased the Vega Protein & Greens powder primarily for personal, family, or household use.

8.      If Plaintiff had known at the time of purchase that the Vega Protein

CLASS ACTION COMPLAINT

& Greens container largely contained empty space and only a third filled with the actual powder, she would not have purchased it or would have paid less for it. Plaintiff continues to visit stores that sell Vega Food and Protein Powders but she cannot determine if they are still substantially under-filled. She would purchase a Vega Food and Protein Powder in the future if the labeling and packaging was no longer misleading and deceptive such that she could determine prior to purchase the level to which the containers are actually filled with protein powder as opposed to empty space.

**Plaintiff Kimberly Owens**

9.      Plaintiff Kimberly Owens is a California citizen who resides in Pico Rivera, California. In or around August 2018, Plaintiff Owens purchased three containers (medium) of chocolate-flavored Vega Protein & Greens powder from the GNC online store, a Vega authorized retailer, and delivered to her residence located within Los Angeles County.

10.      Plaintiff Owens purchased the Vega Protein & Greens powder in reliance on the product's packaging, which made it appear that she was purchasing a substantially-filled container of protein powder, as indicated by the size of the container. Because of its opaque packaging, the contents of the container were not visible to Plaintiff at the time of purchase and Plaintiff had no reason to believe that the container was not entirely full, or at least substantially full, of the Vega powder. However, upon opening one of the containers after purchase, Plaintiff was shocked and upset to find that the Vega container was predominantly comprised of empty space and the Vega powder only filled approximately one-third of the container's capacity. Plaintiff opened the second Vega container purchased in the same transaction and discovered it was similarly under-filled as the first one. Plaintiff then opened the third Vega container purchased in the same transaction and discovered, it too was similarly under-filled as the first two. Plaintiff has not purchased any Vega Food and Protein

1    Powders since her August 2018 purchase because she felt she overpaid for the

2    under-filled Vega products.

3         11.    Plaintiff Owens purchased the Vega Protein & Greens powder

4    primarily for personal, family, or household use.

5         12.    If Plaintiff had known at the time of purchase that the Vega Protein

6    & Greens containers were substantially under-filled and largely contained empty

7    space, she would not have purchased them or would have paid less for them.

8    Plaintiff continues to visit stores that sell Vega Food and Protein Powders, but

9    she cannot determine if they are still substantially under-filled.  She would

10   purchase a Vega Food and Protein Powder in the future if the labeling and

11   packaging was no longer misleading and deceptive such that she could determine

12   prior to purchase the level to which the containers are actually filled with protein

13   powder as opposed to empty space.

14   **<u>DEFENDANTS</u>**

15        13.    Defendant WhiteWave is a corporation organized and in existence

16   under the laws of the State of Delaware and conducts business throughout the

17   State of California.  WhiteWave's corporate headquarters and principal place of

18   business are located at 12002 Airport Way, Broomfield, Colorado 80021.

19   WhiteWave formulates, tests, manufactures, markets, distributes, and sells Vega

20   Food and Protein Powders nationwide and in California.

21        14.    Defendant Danone US, LLC is a limited liability company

22   organized and in existence under the laws of the State of Delaware and is

23   registered to conduct business throughout the State of California.  Danone US,

24   LLC's corporate headquarters are located at 1 Maple Avenue, White Plains, New

25   York 10605.  Since 2017, Danone US, LLC has formulated, tested,

26   manufactured, marketed, distributed, and sold Vega Food and Protein Powders

27   nationwide and in California.

28        15.    Defendant Danone North America, LLC ("Danone NA") is a limited

CLASS ACTION COMPLAINT

1   liability company organized and in existence under the laws of the State of

2   Delaware and conducts business throughout the State of California.  Danone

3   NA's corporate headquarters and principal place of business are located at 12002

4   Airport Way, Broomfield, Colorado 80021.  Since 2017, Danone US, LLC has

5   formulated, tested, manufactured, marketed, distributed, and sold Vega Food and

6   Protein Powders nationwide and in California.

7         16.   At all relevant times, Defendants were and are engaged in the

8   business of designing, testing, manufacturing, marketing, distributing, and

9   selling products in Los Angeles County and throughout the United States of

10  America.

11                            **JURISDICTION**

12        17.   This is a class action.

13        18.   This Court has subject matter jurisdiction over this matter pursuant

14  to 28 U.S.C. § 1331 because this action arises under the Constitution or laws of

15  the United States and the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and

16  (6), in that, as to each Class defined herein:

17              a.    the matter in controversy exceeds $5,000,000.00, exclusive of

18                    interest and costs;

19              b.    this is a class action involving 100 or more class members;

20                    and

21              c.    this is a class action in which at least one member of the

22                    Plaintiff class is a citizen of a State different from at least one

23                    Defendant.

24        19.   The Court has personal jurisdiction over Defendants, which has at

25  least minimum contacts with the State of California because it has conducted

26  business there and has availed itself of California's markets through the

27  marketing, distributing, and selling of Vega Food and Protein Powders.

28                               **VENUE**

20.     Defendants, through their business of advertising, distributing, and selling Vega Food and Protein Powders, have established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendants are deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

21.     In addition, a substantial part of the events or omissions giving rise to these claims and a substantial part of the property that is the subject of this action are in this district.  In addition, Plaintiff Padilla's Declaration, as required under California Civil Code § 1780(d) (but not pursuant to *Erie* and federal procedural rules), reflects that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, or a substantial part of property that is the subject of this action, is situated in Los Angeles County, California.  It is attached as **Exhibit 1**.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

23.     At all relevant times, Defendants have distributed, marketed, advertised, and sold Vega Food and Protein Powders across California and the United States.  Defendants sell Vega Food and Protein Powders at major retail and online outlets including, without limitation, the Vega website, Target, Amazon.com, and various retailers including Vons, Ralphs, CVS Pharmacy, Walgreens, Whole Foods, and Vitamin Shoppe.

24.     Pursuant to California Business and Professions Code §12606(b):

A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:

    (1)    Protection of the contents of the package.

    (2)    The requirements of machines used for enclosing the contents of the package.

(3)    Unavoidable product settling during shipping and handling.

(4)    The need to utilize a larger than required package or container to provide adequate space for the legible presentation of mandatory and necessary labeling information, such as those based on the regulations adopted by the United States Food and Drug Administration or state or federal agencies under federal or state law, laws or regulations adopted by foreign governments, or under an industrywide voluntary labeling program.

(5)    The fact that the product consists of a commodity that is packaged in a decorative or representational container where the container is part of the presentation of the product and has value that is both significant in proportion to the value of the product and independent of its function to hold the product, such as a gift combined with a container that is intended for further use after the product is consumed, or durable commemorative or promotional packages.

(6)    An inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required labeling, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

(7)    The product container bears a reasonable relationship to the actual amount of product contained inside, and the dimensions of the actual product container, the product, or the amount of product therein is visible to the consumer at the point of sale, or where obvious secondary use packaging is involved.

(8)    The dimensions of the product or immediate product container are visible through the exterior packaging, or where the actual size of the product or immediate product container is clearly and conspicuously depicted on any side of the exterior packaging excluding the bottom, accompanied by a clear and conspicuous disclosure that the representation is the actual size of the product or the immediate product container.

(9)    The presence of any headspace within an immediate product container necessary to facilitate the mixing, adding, shaking, or dispensing of liquids or powders by consumers prior to

CLASS ACTION COMPLAINT

use.

(10)   The exterior packaging contains a product delivery or dosing device if the device is visible, or a clear and conspicuous depiction of the device appears on the exterior packaging, or it is readily apparent from the conspicuous exterior disclosures or the nature and name of the product that a delivery or dosing device is contained in the package.

(11)   The exterior packaging or immediate product container is a kit that consists of a system, or multiple components, designed to produce a particular result that is not dependent upon the quantity of the contents, if the purpose of the kit is clearly and conspicuously disclosed on the exterior packaging.

(12)   The exterior packaging of the product is routinely displayed using tester units or demonstrations to consumers in retail stores, so that customers can see the actual, immediate container of the product being sold, or a depiction of the actual size thereof prior to purchase.

(13)   The exterior packaging consists of single or multiunit presentation boxes of holiday or gift packages if the purchaser can adequately determine the quantity and sizes of the immediate product container at the point of sale.

(14)   The exterior packaging is for a combination of one purchased product, together with a free sample or gift, wherein the exterior packaging is necessarily larger than it would otherwise be due to the inclusion of the sample or gift, if the presence of both products and the quantity of each product are clearly and conspicuously disclosed on the exterior packaging.

(15)   The exterior packaging or immediate product container encloses computer hardware or software designed to serve a particular computer function, if the particular computer function to be performed by the computer hardware or software is clearly and conspicuously disclosed on the exterior packaging.

25.   Further, the Federal Food, Drug, and Cosmetic Act (FDCA) prohibits the introduction of food products into interstate commerce that are

misbranded.  *See* 21 U.S.C. § 331(a).  Relevant here, "a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading." 21 C.F.R. § 100.100.  Pursuant to 21 C.F.R. § 100.100(a):

> A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:
>
> (1) Protection of the contents of the package;
>
> (2) The requirements of the machines used for enclosing the contents in such package;
>
> (3) Unavoidable product settling during shipping and handling;
>
> (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;
>
> (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or
>
> (6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

26.     Defendant's Vega Food and Protein Powders' packaging fits squarely within the foregoing definition of non-functional slack fill under both California and federal law.

27.     As depicted in the photos below from the Vega official website[2], the

_____

[2] https://myvega.com/

Vega Food and Protein Powders are sold in a fully-enclosed opaque container that does not allow consumers to even partially view the contents inside. Therefore, the packaging "does not allow the consumer to fully view its contents." 21 C.F.R. § 100.100(a).



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17      28.     Vega Food and Protein Powders' packaging is "filled to be

18  misleading" due to the amount of slack fill it employs that is non-functional.  For

19  example, the Vega One All-in-One Shake contains approximately 50% empty

20  space, including the space taken by the internally packaged scoop, and the

21  packaging does not indicate the capacity of the container as it relates to the

22  amount of product contained therein, thus preventing a reasonable consumer

23  from determining the striking difference in volume between the capacity of the

24  container and the fill amount.[3]

25      29.     As set out in 21 C.F.R. 100.100, non-functional slack fill is defined

26  _____

27      [3] On information and belief, all Vega Food and Protein Powders contain
    substantially similar fill levels and thus, substantially similar non-functional

28  slack fill, approximately 50%.

CLASS ACTION COMPLAINT

1   as "the empty space in a package that is filled to substantially less than its

2   capacity for reasons other than" one of six enumerated safe harbor provisions.

3   The amount of product that a consumer receives when purchasing Vega Food

4   and Protein Powders is clearly filled substantially less than its capacity because it

5   fills less than half the capacity of the container in which it is packaged.

6         30.   Furthermore, the packaging does not fit within any of the safe

7   harbor provisions listed in 21 C.F.R. § 100.100(a):

8         (1)   Pursuant to § 100.100(a)(1), the slack fill does not protect the

9               contents of the packaging, as the product is not fragile or

10              breakable;

11        (2)   Pursuant to § 100.100(a)(2), there is no reason that machines used

12              for enclosing the contents of the package would require an outer

13              container which can hold significantly more product than it

14              actually does, especially when the machines used by Defendants

15              are capable of producing several sizes of containers, as evidenced

16              by the various-sized containers of the Vega Food and Protein

17              Powders ranging from small to large;

18        (3)   Pursuant to § 100.100(a)(3), the slack fill is not necessary to

19              accommodate product settling, as fine powder is not the sort of

20              product that "settles" significantly enough to require double the

21              amount of space; in fact, fine powders are the least likely to

22              "settle" because they fill every space of their containers, similar

23              to sand, such that if there is any settling, it is negligible and would

24              not result in 50% of the container being empty.

25        (4)   Pursuant to § 100.100(a)(4), the packaging does not perform a

26              specific function other than containing the powder and is not used

27              during the preparation of the food or protein shakes;

28        (5)   Pursuant to § 100.100(a)(5), the packaging is not decorative or

CLASS ACTION COMPLAINT

commemorative, does not state or suggest that it is intended to be reused, and does not have "value which is significant in proportion to the value of the product" independent of containing the food; and

(6) Pursuant to § 100.100(a)(6), the container does not need to be significantly larger than its fill to accommodate necessary labeling information, as there are several sized containers available for the Vega Products, as well as comparable products in various, smaller containers produced by competitors.

31. Defendant's packaging is misleading to reasonable consumers, including Plaintiffs and potential class members, and serves only to maximize Defendant's profits.

32. Defendant knows, or should know, that consumers, like Plaintiffs and other Class Members, reasonably rely on the size and style of their packaging in purchasing Vega Food and Protein Powders and would reasonably believe that the packaging contains much more powder than it actually does.

33. In reasonable reliance on the size and style of their packaging, Plaintiffs and Class Members purchased Vega Food and Protein Powders.

34. Plaintiffs and Class Members do not know, did not know, and have no reason to know, that the Vega Food and Protein Powders' packaging contains a significant amount of empty space, because the containers are opaque with no view of the contents inside, at the time of purchase. A reasonable consumer cannot accurately determine the fill of the Vega Food and Protein Powders by shaking or squeezing the packaging, and is certainly not expected to do so prior to purchasing them.

35. To this day, Defendant continues to sell Vega Food and Protein Powders in deceptive packaging, without disclosing the true nature of the contents therein. Because the Vega Food and Protein Powders' packaging does

1   not contain the amount of product reasonably expected by Plaintiffs and Class

2   Members, Defendant's uniform practice of filling and packaging Vega Food and

3   Protein Powders in the foregoing manner was and continues to be misleading and

4   deceptive, and cheats consumers.

5       36.   Each consumer has been exposed to the same or substantially

6   similar deceptive practice, with the same misleading size and style of packaging,

7   containing approximately 50% or more non-functional slack fill.

8       37.   Plaintiffs and other consumers have paid an unlawful premium for

9   the Vega Food and Protein Powders. If Plaintiffs and Class Members knew how

10  little product they were getting and how significantly underfilled the containers

11  were, Plaintiffs and Class Members would not have purchased Vega Food and

12  Protein Powders or would have paid less for them.  Therefore, Plaintiffs and

13  other consumers purchasing the Vega Food and Protein Powders suffered injury

14  in fact and lost money as a result of Defendant's false, unfair, and fraudulent

15  practices, as described herein.

16      38.   As a result of their reliance on Defendant's representations,

17  consumers have suffered an ascertainable loss of money, including, but not

18  limited to, out of pocket costs incurred in purchasing Vega Food and Protein

19  Powders, for which Plaintiffs and other consumers have paid an unlawful

20  premium.  Specifically, they have paid for an amount of product that they

21  expected to but never received.  Plaintiffs and other consumers would have paid

22  significantly less for Vega Food and Protein Powders had they known that the

23  package only contained 50% or less of the product that it had the capacity to

24  hold.  Alternatively, Plaintiffs and other consumers would not have purchased

25  Vega Food and Protein Powders at all had they known that the package only

26  contained 50% or less of the product that it had the capacity to hold. Therefore,

27  Plaintiff and Class Members suffered injury-in-fact and lost money as a result of

28  Defendant's false, unfair, and fraudulent practices, as described herein.

39.    Further, as a result of its deceptive marketing and unfair competition with other similar manufacturers and brands, Defendant realized sizable profits.

40.    As a result of its misleading business practice, and the harm caused to Plaintiffs and Class Members, Defendant should be enjoined from using this deceptive packaging, and should be required to pay for all damages caused to Plaintiffs and Class Members.

## CLASS ALLEGATIONS

41.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

42.    Plaintiffs' proposed Class and Sub Class(es) are defined as:

**Class**: All individuals who purchased one or more containers of Vega Food and Protein Powders in the United States from four years prior to the filing of the complaint to the time of class certification.

**California Class**: All individuals who purchased one or more containers of Vega Food and Protein Powders in California from four years prior to the filing of the complaint to the time of class certification.

**CLRA Sub-Class**: All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

43.    Members of the Class(es) will collectively be referred to as "Class Members."

44.    Excluded from the Class and Sub-Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the

1   presiding state and/or federal court system who may hear an appeal of any

2   judgment entered; and (4) those persons who have suffered personal injuries as a

3   result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class

4   and Sub-Class definitions if discovery and further investigation reveal that the

5   Class and Sub-Class should be expanded or otherwise modified.  There is a well-

6   defined community of interest in the litigation and the class is readily

7   ascertainable.

8       45.    Numerosity:  Although the exact number of Class Members is

9   uncertain and can only be ascertained through appropriate discovery, the number

10  is great enough such that joinder is impracticable.  The disposition of the claims

11  of these Class Members in a single action will provide substantial benefits to all

12  parties and to the Court.  The Class Members are readily identifiable from

13  information and records in Defendant's possession, custody, or control.

14      46.    Typicality:  Plaintiffs' claims are typical of the claims of the Class

15  in that Plaintiffs, like all Class Members, were exposed to Defendant's

16  misleading packaging, purchased a Vega Food and Protein Powder in reliance on

17  the misleading packaging, and suffered losses as a result of such purchases.  The

18  representative Plaintiffs, like all Class Members, have been damaged by

19  Defendant's misconduct in that they incurred expenses due to their reliance on

20  Defendant's deceptive packaging, as described throughout this complaint.

21  Furthermore, the factual bases of Defendant's misconduct are common to all

22  Class Members and represent a common thread resulting in injury to all Class

23  Members.

24      47.    Adequacy:  Plaintiffs are adequate representatives of the Classes

25  because their interests do not conflict with the interests of the members of the

26  Classes they seek to represent, they have retained competent counsel experienced

27  in prosecuting class actions, and they intend to prosecute this action vigorously.

28  The interests of the members of the Classes will be fairly and adequately

1    protected by Plaintiffs and their counsel.

2        48.    Commonality:  Numerous questions of law and fact are common to

3    Plaintiffs and the Class Members that predominate over any question affecting

4    only individual Class Members.  These common legal and factual issues include

5    the following:

6            a.   Whether Vega Food and Protein Powders' packaging contains non-

7                 functional slack fill;

8            b.   Whether Defendant's conduct was unlawful, unfair, and/or

9                 deceptive;

10           c.   Whether Defendant's conduct violates federal and/or state consumer

11                protection laws;

12           d.   Whether Plaintiffs and other Class Members are entitled to equitable

13                relief, including, without limitation, a preliminary and/or permanent

14                injunction;

15           e.   Whether Plaintiffs and other Class Members are entitled to

16                damages;

17           f.   Whether Defendant knew or reasonably should have known of their

18                deceptive representations and omissions relating to its Vega Food

19                and Protein Powders' packaging; and

20           g.   Whether Defendant is obligated to inform Class Members of their

21                right to seek reimbursement for having paid a premium for Vega

22                Food and Protein Powders in reliance on Defendant's

23                misrepresentations.

24       49.    Predominance and Superiority:  Plaintiffs and Class Members have

25   all suffered and will continue to suffer harm and damages as a result of

26   Defendants' unlawful and wrongful conduct.  A class action is superior to other

27   available methods for the fair and efficient adjudication of the controversy.

28   Absent a class action, most Class Members would likely find the cost of

CLASS ACTION COMPLAINT

1   litigating their claims prohibitively high and would therefore have no effective

2   remedy at law.  Because of the relatively small size of the individual Class

3   Members' claims, it is likely that only a few Class Members could afford to seek

4   legal redress for Defendants' misconduct.  Absent a class action, Class Members

5   will continue to incur damages, and Defendants' misconduct will continue

6   without remedy.  Class treatment of common questions of law and fact would

7   also be a superior method to multiple individual actions or piecemeal litigation in

8   that class treatment will conserve the resources of the courts and the litigants and

9   will promote consistency and efficiency of adjudication.

10                          **FIRST CAUSE OF ACTION**

11            **(Violation of California's Consumers Legal Remedies Act, California**

12                          **Civil Code § 1750, *et seq*.,)**

13        50.    Plaintiffs re-allege and incorporate by reference each and every

14   allegation contained in the preceding paragraphs of this Complaint as though

15   fully set forth herein.

16        51.    Plaintiffs brings this cause of action on behalf of themselves and on

17   behalf of the members of the CLRA Sub-Class.

18        52.    Defendant is a "person" as defined by California Civil Code §

19   1761(c).

20        53.    Plaintiffs and CLRA Sub-Class Members are "consumers" within

21   the meaning of California Civil Code § 1761(d) because they bought Vega Food

22   and Protein Powders for personal, family, or household purposes.

23        54.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or

24   services have sponsorship, approval, characteristics, ingredients, uses, benefits,

25   or quantities which they do not have . . . ."  By packaging Vega Food and Protein

26   Powders in its current misleading packages, Defendants have represented and

27   continues to represent that the Product has quantities which it does not have.

28   Therefore, Defendants violate § 1770(a)(5) of the CLRA.

55.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By deceitfully packaging Vega Food and Protein Powders in a container with significantly greater volume than the product contained therein, and then intentionally selling Vega Food and Protein Powders in a manner that does not meet consumer expectations as to the quantity of powder contained in the packaging, Defendants have violated section 1770(a)(9) of the CLRA.

56.     At all relevant times, Defendants knew or reasonably should have known that the Vega Food and Protein Powders packaging contained a significant amount of non-functional slack fill, and that Plaintiffs and other members of the CLRA Sub-Class would reasonably and justifiably rely on the size and style of the package in purchasing Vega Food and Protein Powders.

57.     Plaintiffs and members of the CLRA Sub-Class have reasonably and justifiably relied on Defendants' misleading and fraudulent conduct when purchasing Vega Food and Protein Powders.  Moreover, Defendants' fraudulent and misleading conduct is material in that a reasonable consumer would have considered the amount of product contained in the packaging to be important in deciding whether to purchase Vega Food and Protein Powders or pay less. Therefore, reliance on such conduct as a material reason for the decision to purchase the Product may be presumed or inferred for Plaintiffs and members of the CLRA Sub-Class.

58.     Plaintiffs and members of the CLRA Sub-Class have suffered and continue to suffer injuries caused by Defendants, because they would not have purchased Vega Food and Protein Powders, or would have paid significantly less for it, had they known that Defendants' conduct was misleading and fraudulent.

59.     As a direct and proximate result of Defendants' unfair methods of competition and/or unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

1    60.    Under Cal. Civ. Code § 1780(a), Plaintiffs and members of the

2    CLRA Sub-Class seek damages, restitution, declaratory and injunctive relief, and

3    all other remedies the Court deems appropriate for Defendants' violations of the

4    CLRA.  Plaintiffs seeks to enjoin Defendants from use of deceptive non-

5    functional slack fill in its products.

6    61.    On September 13, 2018, Plaintiff Padilla provided Defendants with

7    notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).

8    Defendant failed to provide appropriate relief for its violations of the CLRA

9    within 30 days.  Therefore, Plaintiff Padilla now seeks monetary, compensatory,

10   and punitive damages, in addition to injunctive and equitable relief.

11                          **SECOND CAUSE OF ACTION**

12      **(Violation of California Business & Professions Code § 17500 *et seq.*)**

13   62.    Plaintiffs incorporate by reference the allegations contained in each

14   and every paragraph of this Complaint.

15   63.    Plaintiffs bring this cause of action on behalf of themselves and on

16   behalf of the Class, or in the alternative, on behalf of the California Class.

17   64.    California Business & Professions Code § 17500 prohibits unfair,

18   deceptive, untrue, and misleading advertising in connection with the disposal of

19   personal property (among other things), including, without limitation, false

20   statements as to the use, worth, benefits, or characteristics of the property.

21   65.    Defendants have represented and continues to represent to the

22   public, including Plaintiffs and Class Members, through its deceptive packaging,

23   that more product is contained within the Vega Food and Protein Powders than is

24   actually contained.  Defendants' representation is misleading because the

25   packaging only contains 50% or less of the amount of product compared to what

26   the packaging could potentially hold.  Defendants made such untrue or

27   misleading advertisements with the intent to dispose of said merchandise.

28   66.    Defendants knew, or in the exercise of reasonable care should have

known, that these representations were misleading and deceptive, and that such representations continue to be misleading.

67.     As a result of their reliance on Defendants' misrepresentations, Class Members suffered an ascertainable loss of money, property, and/or value of the product.

68.     As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

69.     Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class.  Pursuant to § 17535 of the Business & Professions Code, Plaintiffs and Class Members are entitled to an order of this Court enjoining such future conduct on the part of Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for Vega Food and Protein Powders as a result of the wrongful conduct of Defendants.

## THIRD CAUSE OF ACTION

**(Violation of California Business & Professions Code § 17200 *et seq.*)**

70.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

71.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class, or in the alternative, on behalf of the California Class.

72.     As a result of their reliance on Defendants' misrepresentations and omissions, Class Members suffered an ascertainable loss of money, property, and/or value of their Vega Food and Protein Powders.

73.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

74.   Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

75.   Defendants' false and misleading advertising of Vega Food and Protein Powders therefore was and continues to be "unlawful" because it contains unlawful non-functional slack fill as detailed herein in violation of 21 C.F.R. § 100.100.

76.   Furthermore, Defendants' acts, conduct and practices also constituted violations of California's Consumers Legal Remedies Act; and violations of California's False Advertising Law.

77.   By its conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

78.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

79.   As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.  Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**FOURTH CAUSE OF ACTION**

**(For Unjust Enrichment)**

80.   Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

81.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class, or, in the alternative, on behalf of the California Class, against Defendants.

82.   As a direct and proximate result of Defendants' misrepresentations, Defendants have profited through the sale of Vega Food and Protein Powders.

1  Although some of the powders can be purchased through Defendants' agents, the

2  money from the products' sales flows directly back to Defendants.

3       83.    Defendants have therefore been unjustly enriched as a result of

4  Defendants' deceptive business practices in advertising, marketing, and selling

5  the Vega Food and Protein Powders through the use of funds that earned interest

6  or otherwise added to Defendants' profits when said money should have

7  remained with Plaintiffs and Class Members.

8       84.    As a result of the Defendants' unjust enrichment, Plaintiffs and

9  Class Members have suffered damages.

10  **PRAYER FOR RELIEF**

11       85.    Plaintiffs, on behalf of themselves, and all others similarly situated,

12  requests the Court to enter judgment against Defendants, as follows:

13                 a.    An order certifying the proposed Class and Sub-Class,

14                     designating Plaintiffs as named representatives of the Class,

15                     and designating the undersigned as Class Counsel;

16                 b.    An order enjoining Defendants from further deceptive

17                     advertising, sales, and other business practices with respect to

18                     its Vega Food and Protein Powders;

19                 c.    A declaration requiring Defendants to comply with the

20                     various provisions of California's False Advertising Law and

21                     CLRA alleged herein and to make all the required

22                     representations;

23                 d.    An award to Plaintiffs and the Class for compensatory,

24                     exemplary, and statutory damages, including interest, in an

25                     amount to be proven at trial;

26                 e.    A declaration that Defendants must disgorge, for the benefit

27                     of the Class, all or part of the ill-gotten profits it received

28                     from the sale of Vega Food and Protein Powders, or make full

restitution to Plaintiffs and Class Members;

f.    An award of attorneys' fees and costs, as allowed by law;

g.    An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

h.    An award of pre-judgment and post-judgment interest, as provided by law;

i.    Leave to amend the Complaint to conform to the evidence produced at trial; and

j.    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of any and all issues in this action so triable.


Dated: October 31, 2018

Respectfully submitted,

Capstone Law APC


By: /s/ Jordan L. Lurie

Jordan L. Lurie
Tarek H. Zohdy
Cody R. Padgett
Trisha K. Monesi

Attorneys for Plaintiffs Rebecca Padilla and Kimberly Owens

# EXHIBIT 1

1  Jordan L. Lurie (SBN 130013)
   Jordan.Lurie@capstonelawyers.com
2  Tarek H. Zohdy (SBN 247775)
   Tarek.Zohdy@capstonelawyers.com
3  Cody R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
4  Trisha K. Monesi (SBN 303512)
   Trisha.Monesi@capstonelawyers.com
5  Capstone Law APC
   1875 Century Park East, Suite 1000
6  Los Angeles, California 90067
   Telephone:  (310) 556-4811
7  Facsimile:   (310) 943-0396

8  Attorneys for Plaintiffs
   Rebecca Padilla and Kimberly Owens
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13 REBECCA PADILLA and KIMBERLY OWENS, individually, and on behalf of a class of similarly situated individuals, | Case No.: |
| 14 | **DECLARATION OF REBECCA PADILLA IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT PURSUANT TO CIVIL CODE § 1780(d)** |
| 15          Plaintiffs, | |
| 16      v. | |
| 17 THE WHITEWAVE FOODS COMPANY dba WHITEWAVE SERVICES, INC., a Delaware corporation; DANONE US, LLC, a Delaware limited liability company; and DANONE NORTH AMERICA, LLC, a Delaware limited liability company, | |
| 21          Defendants. | |

23

24

25

26

27

28

## DECLARATION OF REBECCA PADILLA

I, REBECCA PADILLA, declare under penalty of perjury as follows:

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true.  I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.     Pursuant to California Civil Code § 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiffs' Cause of Action alleging violation of California's Consumers Legal Remedies Act.

3.     I reside in Long Beach, California, which is in the County of Los Angeles.  I purchased the Vega Protein & Greens powder that is the subject of this lawsuit in the County of Los Angeles.

4.     I am informed and believe that Defendant WhiteWave is a corporation organized and in existence under the laws of the State of Delaware and conducts business throughout the State of California.  I am informed and believe that Defendant Danone US, LLC is a limited liability company organized and in existence under the laws of the State of Delaware and is registered to conduct business throughout the State of California.  I am informed and believe that Defendant Danone North America, LLC ("Danone NA") is a limited liability company organized and in existence under the laws of the State of Delaware and conducts business throughout the State of California.  On information and belief, all Defendants conduct business in Los Angeles County.

5.     Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiffs' Cause of Action alleging violation of California's Consumers Legal Remedies Act because the Vega Food and Protein Powders that are the subject of this lawsuit are situated here, and a substantial portion of the events giving rise to the claims occurred here.

1    6.    I declare under penalty of perjury under the laws of California and

2    the United States of America that the foregoing is true and correct.

3    Executed on October 30 , 2018, in Long Beach, California.

4
DocuSigned by:

*Rebecca Padilla*

5
320A912213914EF...

Rebecca Padilla

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28