Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Steven R. Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiffs Rebecca Padilla and Kimberly Owens

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA PADILLA and KIMBERLY OWENS, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SEQUEL NATURALS ULC, a Canadian company, and VEGA US LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 2:18-cv-09327-JAK<br><br>Hon. Stanley Blumenfeld Jr.<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    May 7, 2021<br>Time:    8:30 a.m.<br>Place:    Courtroom 6C |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 7, 2021 at 8:30 a.m., in Courtroom 6C of the above-captioned Court, located at 350 W. First Street, Los Angeles, California 90012, the Honorable Stanley Blumenfeld, Jr. presiding, Plaintiffs Rebecca Padilla and Kimberly Owens ("Plaintiffs"), on behalf of themselves and all others similarly situated, will, and hereby do, move this Court to:

1.    Preliminarily approve the settlement set forth in the Amended Settlement Agreement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2.    Conditionally certify the proposed injunctive relief Settlement Class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure;

3.    Appoint Plaintiffs Rebecca Padilla and Kimberly Owens as the Class Representatives;

4.    Appoint Capstone Law APC as Class Counsel;

5.    Set a hearing date and briefing schedule for final settlement approval and Plaintiffs' fee and expense application.

This Motion, unopposed by Defendants Sequel Naturals ULC, a Canadian company, and Vega US LLC, is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Amended Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Amended Settlement Agreement and Release and exhibits; (5) the [Proposed] Order Granting Preliminary Approval of Amended Class Action Settlement; (6) the records, pleadings, and papers filed in this action; and (7) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT

1    Dated:  April 9, 2021                          Respectfully submitted,

2                                                   By: /s/ Raul Perez
3                                                   Raul Perez
                                                    Steven R. Weinmann
4                                                   Tarek H. Zohdy
                                                    Cody R. Padgett
5                                                   **CAPSTONE LAW APC**

6                                                   Attorneys for Plaintiffs Rebecca Padilla and
7                                                   Kimberly Owens

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   FACTS AND PROCEDURE ........................................................................2

    A.   Brief Overview of the Litigation ......................................................2

    B.   The Parties' Settlement Efforts .........................................................3

III.  THE AMENDED SETTLEMENT ..............................................................4

    A.   Certification of the Settlement Class ................................................4

    B.   Injunctive Relief and Labeling Changes ..........................................4

    C.   Limited Release of Claims for Injunctive Relief .............................5

    D.   Proposed Attorneys' Fees, Litigation Expenses, and Incentive Awards ..........6

IV.   ARGUMENT .................................................................................................7

    A.   Conditional Class Certification Is Appropriate For Settlement Purposes ..........7

        1.   The Proposed Class Is Sufficiently Numerous and Ascertainable ...........7

        2.   There are Questions of Law and Fact that Are Common to the Class ..........8

        3.   Plaintiffs' Claims Are Typical of the Proposed Settlement Class ............9

        4.   Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Interests of the Proposed Settlement Class ................10

        5.   Defendants Have Allegedly Acted, or Refused to Act, on Grounds That Apply Generally to the Settlement Class .........10

        6.   California Choice-of-Law Rules and the Constitution Permit Application of California Law to this Nationwide Class .........................11

        7.   The Ninth Circuit Authorizes District Courts to Forgo a Multi-State Analysis in this Settlement Context ................................12

        8.   No Notice to The Settlement Class Members Is Required Because the Settlement Provides for Injunctive Relief Only .................15

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

B.    The Court Should Grant Preliminary Approval of the Amended Class

Settlement ..................................................................................................17

1.    The Settlement Was Negotiated at Arm's Length by Experienced

Counsel....................................................................................................19

2.    The Extent of Discovery Completed Supports Preliminary

Approval..................................................................................................20

3.    The Proposed Amended Settlement Is Within the Range of

Reasonableness Considering the Strength of Plaintiffs' Case and

the Risk, Expense, Complexity, and Duration of Further Litigation.......21

4.    The Court Should Preliminarily Approve the Negotiated

Attorneys' Fees and Costs ........................................................................26

V.    CONCLUSION.........................................................................................27

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015)....................................8

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ................................................................18

*Amchem Prods. v. Windsor*, 521 U.S. 591.(1997)...............................................................7

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ............................................................9

*Chan v. Sutter Health Sacramento Sierra Region*, No.
    LACV1502004JAKAGRX, 2016 WL 7638111 (C.D. Cal. June 9, 2016)................17

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090 (N.D. Cal.
    Oct. 22, 2008)...........................................................................................................25

*D.H. Overmyer Co. v. Loflin, Inc.*, 440 F.2d 1213 (5th Cir.1971) ...................................17

*Davidson v. Kimberly-Clark Corp.*, No. C 14-1783 PJH, 2014 WL
    3919857 (N.D. Cal. Aug. 8, 2014) ...........................................................................24

*Ebner v. Fresh Inc.*, Case No.: 13-56644, 2016 (9th Cir. March 17, 2016).....................22

*Estrella v. Freedom Fin'l Network*, No. C-09-03156-SI, 2010 U.S. Dist.
    LEXIS 61236 (N.D. Cal. June 2, 2010)......................................................................8

*Granfield v. NVIDIA Corp.*, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ....................24

*Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH BGS, 2014
    WL 888665 (S.D. Cal. Mar. 5, 2014) ........................................................................21

*Graves v. United Indus. Corp.*, No. 217CV06983CASSKX, 2020 WL
    953210.(C.D. Cal. Feb. 24, 2020) ............................................................................12

*Green v. American Express Co.*, 200 F.R.D. 211 (S.D.N.Y. 2001) .................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................8, 9, 10, 13

*Harmsen v. Smith*, 693 F.2d 932 (9th Cir. 1982).............................................................11

*Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917 (N.D. Cal. 2014).....................................24

*Hensley v. Eckehart*, 461 U.S. 424 (1983) ................................................................ 19, 26

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........... 18, 19, 26

*In re Ferrero Litig.,* 278 F.R.D. 552 (S.D. Cal. 2011) ..................................................9

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ........................7, 14

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)...............................................23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) ...................................................................7, 19

*Jabbari v. Farmer*, 965 F.3d 1001 (9th Cir. 2020)....................................................12, 25

*Jackson v. Gen. Mills, Inc.*, 2019 WL 4599845 (S.D. Cal. Sept. 23, 2019).....................24

*Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644.(S.D.N.Y. June 27, 2012)................................................................................................................15

*Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. Ga. 1979)..............................17

*Kline v. Dymatize Enterprises, LLC*, 2016 WL 6026330 (S.D. Cal. Oct. 13, 2016).............................................................................................. 19, 23

*Kline v. Dymatize Enterprises, LLC*, No. 15-CV-2348-AJB-RBB, 2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) ...............................................19

*Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017) ......................................23

*Laguna v. Coverall North America,* 753 F.3d 918 (9th Cir. 2014)....................................26

*Lilly v. Jamba Juice Co.*, 2015 WL 2062858 (N.D. Cal. May 4, 2015)............................21

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ............................9

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)...........................12, 14, 25

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2019 WL 343472 (N.D. Cal. Jan. 28, 2019).................................................................. 16, 21

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)..................................................................17

*Officers for Justice v. Civil Service Comm'n*, 668 F.3d 615 (9th Cir. 1982) ....................21

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)......................................................11

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) .....................................................11

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)................................................................................................................18

1    *Selby v. Principal Mut. Life Ins. Co.*, 2003 WL 22772330 (S.D.N.Y. Nov.
2         21, 2003) .................................................................................................16
3    *Stathakos v. Columbia Sportswear Co.*, No. 4:15-CV-04543-YGR, 2018
4         WL 582564.(N.D. Cal. Jan. 25, 2018) ...................................................15
5    *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................26
6    *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172 (9th Cir.
7         1987) .........................................................................................................11
8    *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal.
9         2009) ...........................................................................................................7
10   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...............................8, 13, 15
11   *Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913 (C.D. Cal.
12        Dec. 2, 2016) .............................................................................................25
13   *Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987)...........................9
14   *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ....................22
15   *Woodard v. Labrada*, No. 16-cv-00189, 2019 WL 4509301 (C.D. Cal.
16        April 23, 2019) ..........................................................................................12
17
18   **STATE CASES**
19   *Bernhard v. Harrah's Club*, 16 Cal.3d 313 (1976) .......................................11
20   *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906 (2001) .....................11
21
22   **FEDERAL STATUTES**
23   21 C.F.R. § 100.100(a)(3) ...............................................................................23
24   21 C.F.R. § 100.100(a) ...................................................................................22
25   Fed. R. Civ. P. 23 ..........................................................................................7
26   Fed. R. Civ. P. 23(a) ......................................................................................8
27   Fed. R. Civ. P. 23(a)(1) ..................................................................................7
28   Fed. R. Civ. P. 23(a)(2) ..................................................................................8

Fed. R. Civ. P. 23(a)(4) ........................................................................10

Fed. R. Civ. P. 23(b)(2) ..................................................................10, 17

Fed. R. Civ. P. 23(e)(1)(A) ..................................................................17

Fed. R. Civ. P. 23(h) .............................................................................26


STATE STATUTES

Cal. Bus. & Prof. Code § 12606.2 .......................................................22

Cal. Bus. & Prof. Code § 12606.2(c)(3) ..............................................23

Cal. Bus & Prof. Code § 17200 *et seq.* (Unfair Competition Law (UCL)) .......................3

Cal. Bus & Prof. Code § 17500 *et seq.* (False Advertising (FAL)) ...................................2

Cal. Civ. Code § 1750, *et seq.* (Consumer Legal Remedies Act (CLRA))......................2


SECONDARY AUTHORITIES

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)..........................16, 18, 22

7B Charles Alan Wright & Arthur R. Miller, Federal Practice and
   Procedure § 1797, p. 365 (2d ed. 1986 & Supp.2003)..................................15

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957-01,
   1993 WL 1564 . (Jan. 6, 1993) .......................................................5, 22

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123,
   64127 (Dec. 6, 1993) ......................................................................22

Wright & Miller, § 1797, p. 366 ..........................................................15

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# I.    INTRODUCTION

The gravamen of this action is that Defendants Sequel Naturals ULC and Vega US LLC ("Defendants" or "Vega") allegedly misled consumers by selling under-filled containers of protein and meal replacement powders in violation of state and federal "slack fill" laws. The Parties' Amended Settlement Agreement and Release[1] ("Settlement" or "Settlement Agreement") directly addresses this issue by requiring Vega to provide Class Members with broad injunctive relief in the form of three modifications to the labels used on the at-issue Products:

- **<u>Minimum Fill Line</u>**: A fill line on the Product cartons that shows the expected minimal level of fill ("Fill Line Disclosure"). This injunctive relief is identical to that approved by the Eastern District of New York in *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 20 (E.D.N.Y. 2019), vacated and remanded on another ground, 964 F.3d 141 (2d Cir. 2020). By clearly identifying that portion of the cartons that Plaintiffs alleged was misleadingly empty, this label modification directly resolves Plaintiffs' claims and the alleged "slack fill."

- **<u>Serving Size Information on the Front of Labels</u>**: A disclosure statement, in prominent lettering and font on the front of the label, indicating the number of servings contained in the product carton ("Servings Disclosure").

- **<u>Contents May Settle Disclosure</u>**: A disclosure statement, in prominent lettering and font, and in plain language, indicating that the contents of the product carton may settle during shipping ("Settling Disclosure"). This modification is intended to inform consumers that there is empty space in the cartons, and is comparable to the relief approved by the Eastern District of New York in *Berni v. Barilla G. e R. Fratelli, S,p.A. supra.* (adding a disclaimer noting that there is empty space in the box).

Given the scope and breadth of this injunctive relief, Plaintiffs have determined

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same definition as those defined by the Settlement Agreement.

1   that the benefits of this Settlement outweigh the risks of continued litigation to pursue

2   what would potentially be nominal monetary damages for the Class. The Settlement

3   accounts for the substantial risks the Parties would face if the litigation continued, and

4   provides meaningful relief on a national basis *without* waiving any individual Class

5   Member's right to monetary relief.

6        Plaintiffs accordingly request that this Court review their negotiated Settlement

7   Agreement, attached as Exhibit 1 to the accompanying Declaration of Raul Perez, and

8   enter an order:  (1) granting preliminary approval of the Settlement; (2) certifying a class

9   for settlement purposes; (3) appointing Plaintiffs as Class Representatives and Plaintiffs'

10  counsel, Capstone Law APC as Class Counsel; and (4) setting a hearing on whether the

11  Court should grant Final Approval of the Settlement, enter judgment, award attorneys'

12  fees and expenses to Plaintiffs' counsel, and grant incentive awards to Plaintiffs.

13  **II.      FACTS AND PROCEDURE**

14       **A.      Brief Overview of the Litigation**

15       On October 31, 2018, Plaintiffs brought this putative class action against The

16  WhiteWave Foods Company d/b/a WhiteWave Services, Inc., Danone US, LLC and

17  Danone North America, LLC. (Dkt. No. 1.) The parties subsequently filed a "Joint

18  Stipulation to Amend Complaint to Name Proper Defendants and Dismiss Improperly

19  Named Defendants Without Prejudice," which was approved. (Dkt. Nos. 22, 23.) On

20  January 18, 2019, the WhiteWave Foods Company d/b/a WhiteWave Services, Inc.,

21  Danone US, LLC and Danone North America, LLC were dismissed without prejudice.

22  (Dkt. No. 23.)

23       Plaintiffs filed a first amended complaint against Vega on January 25, 2019 (Dkt.

24  No. 24), and a corrected first amended complaint ("FAC") on January 30, 2019 (Dkt. No.

25  25).

26       The FAC alleges four causes of action: (i) violation of the Consumers Legal

27  Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (ii) violation of False

28  Advertising Law ("FAL"), Cal. Bus & Prof. Code § 17500 *et seq.*; (iii) violation of Unfair

1    Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200 *et seq.*; and (iv) unjust

2    enrichment. (Dkt. No. 25.) Each claim arises from the alleged non-functional "slack fill"

3    in the products sold by Defendants. (*Id.* ¶¶ 3-4.)

4        On February 15, 2019, Defendants filed a motion to dismiss the FAC pursuant to

5    Fed. R. Civ. P. 12(b)(6) ("Motion"). (Dkt. No. 26.) Plaintiffs filed an opposition to the

6    Motion, and Defendants filed a reply. (Dkt Nos. 38, 43.) On July 26, 2019, the Court

7    granted in part, and denied in part, the Motion. (Dkt. No. 52.) The Motion was granted as

8    to the unpurchased products, without prejudice to an amended complaint that presented

9    additional factual allegations in support of substantial similarity of the Products. (*Id.*) The

10   Motion was denied as to all other grounds. (*Id.*) Plaintiffs filed a Second Amended

11   Complaint on August 16, 2019 (Dkt. No. 55.)

12       **B.      The Parties' Settlement Efforts**

13       The Parties engaged in vigorous litigation relating to the facts and legal issues in

14   the Action. As a result of this contentious litigation, Plaintiffs' Counsel were able to

15   thoroughly review the claims of the Settlement Class Members and Defendants' policies,

16   practices and procedures as they relate to the marketing and sale of the Products.

17   (Declaration of Raul Perez ["Perez Decl."] ¶ 6.)

18       Counsel for the Parties engaged in mediation before the Hon. Margaret A. Nagle

19   (Ret.) of JAMS on December 16, 2019, as well as multiple conference calls and

20   discussions prior to finally resolving this matter. The Parties also took into consideration

21   the Court's criticism of the terms of their original settlement, and its suggestions for

22   providing additional forms of injunctive relief to the class. (Perez Decl. ¶ 7.)

23       Based on the current state of the law, the expense, burden and time necessary to

24   prosecute the Action through trial and possible appeals, the risks and uncertainty of

25   further prosecution of this Action considering the defenses at issue, the sharply contested

26   legal and factual issues involved, and the relative benefits to be conferred upon Plaintiffs

27   and the Settlement Class Members pursuant to the Settlement, Plaintiffs' Counsel has

28   concluded that a settlement with Defendants on the terms set forth in the Settlement

1  Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class in

2  light of all known facts and circumstances. (Perez Decl. ¶ 8.)

3  **III.   THE AMENDED SETTLEMENT**

4      The Settlement Agreement defines the Settlement Class and describes the

5  injunctive relief to which the Parties have agreed.

6      **A.    Certification of the Settlement Class**

7      Pursuant to the Settlement Agreement, the Parties agree to seek provisional

8  certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2),

9  defined as:

10         All persons in the United States who purchased all Vega protein and
           meal replacement powders (including without limitation, the Vega One
11         Organic All-in-One Shake, Vega Sport Premium Protein, Vega Protein
           & Greens, Vega One All-in-One Shake, Vega Clean Protein, Vega
12         Sport Protein, and Vega Essentials Shake) (collectively, "Products")
           during the Class Period. Excluded from the Settlement Class are
13         counsel of record (and their respective law firms) for the Parties;
           Defendants and any of their parents, affiliates, subsidiaries,
14         independent service providers and all of their respective employees,
           officers, and directors; the presiding judge in the Action or judicial
15         officer presiding over the matter, and all of their immediate families
           and judicial staff; and any natural person or entity that entered into a
16         release with Defendants prior to the Effective Date concerning the
           Products.
17

18  (Settlement Agreement, Definitions, ¶ O.)

19      **B.    Injunctive Relief and Labeling Changes**

20      As provided by the Settlement, Vega will modify the packaging for its Products to

21  address Plaintiffs' slack fill claim. (Settlement Agreement, Terms, ¶ C.) Specifically,

22  Vega must modify the labels used on the Products' packaging to add:  (1) a fill line that

23  shows the expected minimal level of fill in the product carton; (2) a disclosure statement,

24  in prominent lettering and font on the front of the label, indicating the number of servings

25  contained in the product carton; and (3) a disclosure statement, in prominent lettering and

26  font and in plain language, indicating that the contents of the product carton may settle

27  during shipping. (*Id.* at ¶¶ C(1)-(3).)

28      Vega will immediately begin the process to have the Fill Line Disclosure in

1  production on all Products, and will use its best efforts to have the Fill Line Disclosure in

2  production for the Organic line of Products by December 31, 2021. (*Id.* at ¶ C.) The

3  remaining Products require rigorous testing to determine where to place the Fill Line

4  Disclosure, and for these Products, Vega will use its best efforts to have the Fill Line

5  Disclosure in production by December 31, 2023. (*Id.*) Vega will use its best efforts to

6  have the Settling Disclosure in production by December 31, 2021, and the Servings

7  Disclosure in production by May 31, 2022, on all Products. (*Id.*)

8      The phased modification to the labels on the at-issue Products is necessary to allow

9  for controlled testing regarding proper placement of the Fill Line Disclosure. (*Id.*)

10  Specifically, to ensure the Fill Line Disclosure is appropriately placed requires evaluating

11  the degree of settling and corresponding minimum fill level associated with each of the

12  Products in each of their iterations (e.g., size, flavor, ingredient composition / formulation,

13  density, manufacturing location, manufacturing line). For instance, the amount of

14  settlement will vary depending on the density of the powder, which varies by ingredient

15  composition. *See Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957-

16  01, 1993 WL 1564 at *2962 (Jan. 6, 1993). The nature and complexity of these variables

17  and their impacts on Fill Line Disclosure placement from one product to the next

18  demands rigorous and time/labor-intensive testing and verification followed by the

19  development and implementation of revised labels reflecting the Fill Line Disclosure.

20      **C.    Limited Release of Claims for Injunctive Relief**

21      In exchange for the injunctive relief provided by the Settlement, Settlement Class

22  Members will release all claims for injunctive relief only—the release specifically

23  excludes claims for damages or monetary relief claims of any kind (*see* Settlement

24  Agreement, Litigation Background, ¶ D)—relating to the allegation that Vega conceals

25  the amount of powder actually contained in its Products:

26      Upon the Effective Date, and except as to such rights or claims as may
       be created by this Agreement, and in consideration for the Settlement
27      benefits described in this Agreement, the Settlement Class shall fully
       release and discharge Defendants and all of their present and former
28      parent companies, subsidiaries, shareholders, officers, directors,
       employees, agents, servants, registered representatives, attorneys,
       insurers, affiliates, successors, personal representatives, heirs and

1  assigns, retailers, suppliers, distributors, endorsers, consultants, and
2  any and all other entities or persons upstream and downstream in the
   production/distribution channels (together, the "Discharged Parties")
3  for injunctive relief, including claims, demands, actions, and causes of
   action of any kind or nature whatsoever for injunctive relief, whether
4  known or unknown, direct, indirect, or consequential, foreseen or
   unforeseen, developed or undeveloped, arising under common law,
5  regulatory law, statutory law, or otherwise, whether based on federal,
   state or local law, statute, ordinance, regulation, code, contract,
6  common law, or any other source, or any claim that Settlement Class
   Members ever had or now have against the Discharged Parties in any
7  other court, tribunal, arbitration panel, commission, agency, or before
   any governmental and/or administrative body, or any other
8  adjudicatory body, including under the causes of action alleged in the
   Complaint, as well as claims under similar state statutes nationwide,
9  on the basis of, connected with, arising from, or in any way whatsoever
   relating to the purchase of the Products during the Class Period and the
10 claims alleged in the Complaint in the Action, and, more particularly,
   but without in any way limiting the generality of the foregoing, arising
11 from, directly or indirectly, or in any way whatsoever pertaining or
   relating to the claims alleged in the Complaint in the Action, including,
12 but not limited to, whether Defendants conceal the amount of Product
   actually contained therein, whether the Products are comprised of non-
13 functional empty space, and whether the Products are under-filled
   ("Released Claims for Injunctive Relief"), but excluding any and all
14 claims to statutory damages or monetary relief of any kind. The release
   will include a release of claims pursuant to Section 1542 of the
15 California Civil Code (and similar state statutes) as it pertains to
   injunctive relief only. The Settlement is not intended to create any new
16 rights, or expand any existing rights, that any Settlement Class
   Member may have against Defendants under any state or federal law.

17  (*Id.*)

18      **D.      Proposed Attorneys' Fees, Litigation Expenses, and Incentive Awards**

19      The Parties have negotiated capped sums for attorneys' fees, expenses, and

20 incentive awards, with the amount finally awarded by the Court not affecting the

21 Settlement Class benefits in any way. (*See* Settlement Agreement, Terms, ¶ F.) Subject to

22 Court approval, Plaintiffs' Counsel's will apply for attorneys' fees and documented costs

23 of a combined sum up to $220,000. (*Id.*)

24      Also subject to Court approval, Plaintiffs will apply for incentive awards for their

25 efforts to secure valuable injunctive relief on behalf of the Settlement Class, in the amount

26 of $2,500, each. (*Id.*)  Further details will be provided when Plaintiffs submit their

27 application for fees, costs, and incentive awards.

28

1    IV.    **ARGUMENT**

2        A.    **Conditional Class Certification Is Appropriate For Settlement**

3               **Purposes**

4        Before granting preliminary approval of the Settlement, the Court should

5    determine that the proposed settlement class meets the requirements of Rule 23. *See*

6    *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). The Court must apply the criteria

7    for class certification "differently in litigation classes and settlement classes." *In re*

8    *Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) ("*Hyundai*

9    *II*"). For example, in deciding whether to certify a litigation class, a district court must be

10    concerned with manageability at trial. However, such "manageability is not a concern in

11    certifying a settlement class where, by definition, there will be no trial." *Id.* On the other

12    hand, in deciding whether to certify a settlement class, a district court must give

13    heightened attention to the definition of the class or subclasses. *See In re Volkswagen*

14    *"Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig*., 895 F.3d 597, 606 (9th Cir.

15    2018) ("In the settlement context, a court "must pay 'undiluted, even heightened

16    attention' to the class certification requirements." (citation omitted)). That said, the Ninth

17    Circuit en banc court in *Hyundai II* recognized that the element of predominance is

18    "readily met" in cases, such as here, alleging consumer fraud. *Hyundai II*, 926 F.3d at

19    559.

20        **1.**    **The Proposed Class Is Sufficiently Numerous and Ascertainable**

21        The numerosity requirement is met where "the class is so numerous that joinder of

22    all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class

23    sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley*

24    *Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a

25    level of 40 members). Here, while the exact number of Settlement Class Members is

26    presently unknown, Plaintiffs are informed and believe that there are millions of members

27    of the Settlement Class throughout the nation, which clearly satisfies the numerosity

28    prerequisite pursuant to Fed. R. Civ. P. 23(a)(1). *See Abdeljalil v. GE Capital Corp.*, 306

1  F.R.D. 303, 308 (S.D. Cal. 2015) ("Based on the record presented, it is clearly reasonable
2  that at least 40 class members or more can be identified from defendant's 340 million
3  account holders.").

**2.    There are Questions of Law and Fact that Are Common to the Class**

6    The second Rule 23(a) requirement is commonality, which is satisfied "if there are
7  questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). The operative
8  criterion for commonality is "the capacity of a classwide proceeding to generate common
9  answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564
10 U.S. 338, 350 (2011). The "commonality requirement has been 'construed permissively,'
11 and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, No. C-09-
12 03156-SI, 2010 U.S. Dist. LEXIS 61236, at *25 (N.D. Cal. June 2, 2010) (quoting
13 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018-20 (9th Cir. 1998)). A single common
14 question of law or fact satisfies this requirement. *See Dukes*, 564 U.S. at 369.

15   Here, for purposes of settlement, the proposed Settlement Class Members' claims
16 all stem from the same factual circumstances, specifically that Settlement Class Members
17 purchased one or more of Vega's Products from October 31, 2014 to the date of
18 Preliminary Approval. (Settlement Agreement, Definitions, ¶¶ D, O.)

19   Plaintiffs' claims present a number of questions of law that are common to all
20 members of the Settlement Class, including: (1) whether Vega labeled, packaged,
21 marketed, advertised and/or sold the Products to Plaintiffs, and those similarly situated,
22 using false, misleading and/or deceptive packaging and labeling; (2) whether Vega's
23 actions constitute violations of 21 CFR 100.100, *et. seq.*; (3) whether Vega's actions
24 constitute violations of state consumer protection laws; (4) whether Vega omitted and/or
25 misrepresented material facts in connection with the labeling, packaging, marketing,
26 advertising and/or sale of its Products; (5) whether Vega's labeling, packaging, marketing,
27 advertising and/or selling of Products constituted an unfair, unlawful or fraudulent
28 practice; (6) whether Vega's packaging of the Products constituted non-functional slack

1  fill; and (7) whether, and to what extent, injunctive relief should be imposed on Vega to

2  prevent such conduct in the future. *See In re Ferrero Litig.,* 278 F.R.D. 552, 560 (S.D.

3  Cal. 2011) ("Plaintiffs presents sufficient facts to show that all of the class members'

4  claims share a common contention: namely, that Defendant made a material

5  misrepresentation regarding the nutritious benefits of Nutella® that violated the UCL,

6  FAL and the CLRA.").

7      Plaintiffs seek the same remedy as Settlement Class Members; namely, injunctive

8  relief. (Settlement Agreement, Terms, ¶ C.) Plaintiffs are not receiving any statutory

9  damages or monetary relief under the Settlement but will request incentive payments be

10  awarded to them by the Court. Under these circumstances, the commonality requirement

11  is satisfied for purposes of certifying a settlement class. *See Hanlon*, 150 F. 3d at 1019-20.

12          **3.    Plaintiffs' Claims Are Typical of the Proposed Settlement Class**

13      "In determining whether typicality is met, the focus should be on the defendants'

14  conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v.*

15  *AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is

16  "satisfied when each class member's claim arises from the same course of events, and

17  each class member makes similar legal arguments to prove the defendant's liability."

18  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted).

19      For purposes of settlement, Plaintiffs' claims are typical of the claims of the whole

20  class because they arise from the same factual basis—(i.e. purchasing one or more of

21  Vega's Products) and are based on the same legal theory as applies to the Class as a

22  whole—(i.e. that the containers in which Vega's Products are sold contain undisclosed

23  non-functional slack fill in violation of the CLRA, UCL, and other similar state statutes).

24  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Plaintiffs' claims here

25  are typical of (if not virtually identical to) the claims of the Settlement Class Members.

26  Thus, the typicality requirement for certifying a settlement class is satisfied.

27

28

1
2

**4.      Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Interests of the Proposed Settlement Class**

3        Adequacy is satisfied because "the representative parties will fairly and adequately

4   protect the interests of the class," (Fed. R. Civ. P. 23(a)(4)); specifically: (a) the proposed

5   representative Plaintiffs do not have conflicts of interest with the proposed class and (b)

6   Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

7        Here, Plaintiffs are adequate class representatives, as they have no conflict of

8   interest with the proposed Class. Plaintiffs and their counsel have no known conflicts of

9   interest with other Settlement Class Members because, and for purposes of Settlement,

10  Plaintiffs' claims are typical of (and virtually identical to) those of other Settlement Class

11  Members who purchased one or more of Vega's Products. Plaintiffs and their counsel

12  have been prosecuting this action in a time-efficient manner since it was filed on October

13  31, 2018, and participated in a mediation session with the Hon. Margaret A. Nagle (Ret.).

14  (Perez Decl. ¶ 7.) Plaintiffs and their counsel share the common goal of protecting and

15  improving consumer rights throughout the nation. Also, Plaintiffs' Counsel have

16  extensive experience in litigation, including the prosecution of class actions seeking to

17  protect consumer rights, and Plaintiffs' Counsel are qualified and able to conduct this

18  litigation. Thus, Rule 23(a)(4) is satisfied.

19

20

**5.      Defendants Have Allegedly Acted, or Refused to Act, on Grounds That Apply Generally to the Settlement Class**

21       "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking

22  class certification must also show that the action is maintainable under Fed. R. Civ. P.

23  23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  The relevant inquiry under Rule 23(b)(2)

24  asks whether "the party opposing the class has acted or refused to act on grounds that

25  apply generally to the class, so that final injunctive relief or corresponding declaratory

26  relief is appropriate respecting the class as a whole[.]" *See* Fed. R. Civ. P. 23(b)(2).

27  Plaintiffs allege that Vega has acted in a way common to the entire Settlement Class and

28  request injunctive relief to correct the alleged violations. Vega does not oppose the

1    injunction, and therefore, Plaintiffs need not actually prove that Vega violated, or is about

2    to violate, various state consumer protection statutes in order to obtain injunctive relief.

3    *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987) (the

4    court may infer from a defendant's past violations that "future violations are likely to

5    occur"). Without an injunction, Vega may choose to continue to include alleged non-

6    functional slack fill in opaque containers, especially when considering its denial of any

7    and all wrongdoing and claim to statutory safe harbor defenses. (Settlement Agreement,

8    Litigation Background, ¶ C.)

9                    **6.       California Choice-of-Law Rules and the Constitution Permit**

10                              **Application of California Law to this Nationwide Class**

11           Subject to constitutional limitations and the forum state's choice of law rules, a

12    court adjudicating a multistate class action is free to apply the substantive law of a single

13    state to the entire class. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 823 (1985); *see*

14    *also Harmsen v. Smith*, 693 F.2d 932, 946-47 (9th Cir. 1982) (explaining that a district

15    court sitting in diversity must "apply the substantive law of the state in which it sits,

16    including choice-of-law rules"). Under California's choice of law rules, courts may apply

17    California law to a national settlement class without violating the Constitution "unless a

18    party litigant timely invokes the law of a foreign state." Where the law of a foreign state is

19    timely invoked, it is "the foreign law proponent" who must "shoulder the burden of

20    demonstrating that foreign law, rather than California law, should apply to class claims."

21    *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 1080-81 (2001) (*quoting*

22    *Bernhard v. Harrah's Club*, 16 Cal.3d 313 (1976)); *accord Pokorny v. Quixtar, Inc.*, 601

23    F.3d 987, 995 (9th Cir. 2010).

24           In the settlement context, the "foreign law proponent" would be an objector, as

25    neither settling party would object to the application of California law. *Hyundai II*, 926

26    F.3d at 562. Here, there is no foreign law proponent because Defendant does not oppose

27    certification of a nationwide *settlement* class under California law. Defendant is thus,

28    willingly and for settlement purposes only, subjecting itself to California law, including

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT

1  California's Consumers Legal Remedies Act, which provides greater protections to
2  consumers than other jurisdictions. A similar national settlement class was recently
3  certified by the Northern District of California in a case much like this one. In *Klein et al.*
4  *v. Dymatize Ent., LLC*, the court certified a nationwide injunctive settlement class where
5  there were allegations of non-functional slack-fill in the Defendants' protein powder
6  products. *See Klein et al. v. Dymatize Ent., LLC*, No. 15-cv-2348, Dkt. No. 44 (N.D. Cal.
7  May 2, 2017).

8        Furthermore, in the settlement context, other states' interests would not be
9  undermined by the application of California law because Defendant is opting into a
10  regime that protects consumers more vigorously than other states. *Woodard v. Labrada*,
11  No. 16-cv-00189, 2019 WL 4509301, at *6 n.6 (C.D. Cal. April 23, 2019) (other states'
12  interests not subverted to California law because the defendant opts into regime that
13  protects consumers more vigorously than other states).

14        Finally, Plaintiffs seek to certify an injunctive relief-only class under Rule 23(b)(2).
15  Rule 23(b)(2) contains no predominance requirement, and thus no choice of law analysis
16  is implicated by Plaintiffs' request to certify a class under 23(b)(2). *Mazza v. Am. Honda*
17  *Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012).

18              **7.    The Ninth Circuit Authorizes District Courts to Forgo a Multi-**
19                    **State Analysis in this Settlement Context**

20        A multi-state analysis of the various laws of the 50 states is not required here
21  because the class is being certified for settlement, and there are common issues among the
22  class. (*See* Dkt. No. 62 at 16-17 (discussing common issues). As the Ninth Circuit
23  recently held, "[f]or purposes of a settlement class, differences in state law do not
24  necessarily, or even often, make a class unmanageable. . . . *Hyundai* [*II*] made clear that ***it***
25  ***generally is not legal error to forego a choice-of-law analysis in a settlement-class***
26  ***predominance inquiry***." *Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020)
27  (emphasis added); *Graves v. United Indus. Corp.*, No. 217CV06983CASSKX, 2020 WL
28  953210, at *11 (C.D. Cal. Feb. 24, 2020) ("[t]here are also no concerns here about

1    certifying a nationwide settlement class").

2         Indeed, the Ninth Circuit has repeatedly discussed the impact of California's choice

3    of law analysis on class certification—in the separate and distinct contexts of trial and

4    settlement—in considerable detail. For example, in *Hanlon v. Chrysler Corp.*, the Ninth

5    Circuit affirmed the district court's certification of a national <u>settlement</u> class asserting

6    various consumer protection causes of action without requiring a choice-of-law analysis.

7    150 F.3d 1011, 1023-24 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores,*

8    *Inc. v. Dukes*, 564 U.S. 338 (2011). The Ninth Circuit held that variations in "products

9    liability, breaches of express and implied warranties, and 'lemon laws' " across the states

10   did not defeat predominance because "there were still sufficient common issues to warrant

11   a class action, particularly questions of Chrysler's prior knowledge of the latch deficiency,

12   the design defect, and a damages remedy." *Id.* at 1022-23. A conclusion as to which

13   state's law applied was not necessary to the predominance determination in that case

14   because the law of each state at issue shared common questions that were central to the

15   resolution of the claims and capable of resolution in one fell swoop.

16        In *Mazza*, which involved a class certification for <u>trial</u>, the Ninth Circuit came to

17   the opposite conclusion. There, the Court held that the district court abused its discretion

18   by certifying a nationwide class because the district court erroneously applied California

19   law to the entire class. 666 F.3d at 589-90. In applying California's governmental-interest

20   test, the Ninth Circuit identified material differences in the relevant state laws, such as

21   differing scienter and reliance requirements. *Id.* at 590-91. Critically, the Ninth Circuit did

22   not hold that no class could exist, especially given the possibility of subclasses, only that

23   the class as certified was the result of an erroneous choice-of-law analysis. *Id.* at 594.

24        Thus, *Jabbari* and *Hanlon* affirmed a <u>settlement</u> class's certification whereas

25   *Mazza* reversed a certification for <u>trial</u>. Those cases align with the general rule that

26   predominance is easily satisfied in the settlement context. *Hyundai II*, 926 F.3d at 558.

27   This legal principle was eventually set forth by the Ninth Circuit in *Hyundai II*.

28        In *Hyundai II*, a putative class of consumers sued the automaker Hyundai under

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT

California consumer-protection law, among other claims, alleging that Hyundai "misled
consumers throughout the United States by advertising inflated fuel economy standards"
in particular vehicles. *Id.* at 553. The district court considered class certification for trial
and for settlement. At first the court indicated that it was likely to deny class certification
for trial. *In re Hyundai & Kia Fuel Econ. Litig. (Hyundai I)*, 881 F.3d 679, 692-93 (9th
Cir. 2018) (citing *Mazza*, 666 F.3d at 590-92). Later, when asked to certify a class for
settlement purposes, the district court determined that "such an [extensive choice-of-law]
analysis," as *Mazza* required, "was not warranted in the settlement context." *Id.* at 700.
Instead, consistent with *Hanlon*, the district court held that common questions, such as
"[w]hether the fuel economy statements were in fact accurate" and "whether defendants
knew that their fuel economy statements were false or misleading," predominated. *Id.* at
708 (Nguyen, J., dissenting) (alteration in original).

The Ninth Circuit reviewed the decision and a three-judge panel relied on *Mazza* to
reverse on appeal. *Id.* at 702-03 (majority opinion). The panel reasoned that, "[i]n failing
to apply California choice of law rules, the district court committed a legal error" because,
"[a]s explained in *Mazza*, the district court was required to apply California's choice of
law rules." *Id.* at 702. The distinction between certifying a class for trial or settlement, the
panel concluded, was immaterial. *Id.* at 702-03.

An en banc panel of the Ninth Circuit then reversed that decision after a rehearing.
The en banc panel clarified that "[t]he criteria for class certification are applied differently
in litigation classes and settlement classes." *Hyundai II*, 926 F.3d at 556. In the settlement
context, a district court assessing predominance "need not inquire whether the case, if
tried, would present intractable management problems." *Id.* at 558. Reaffirming *Hanlon*,
the en banc panel explained that common issues like whether the fuel economy
statements were inaccurate and whether the automakers knew about the inaccuracy were
the sort of "common course of conduct by [a] defendant" that can establish
predominance. *Id.* at 559.

*Hyundai II* thus dictates that, despite variations in state law, a district court may

forgo a choice-of-law analysis before determining that common issues predominate *for a settlement class*. *Id.* at 562-63 & n.6.1. Certification of a class for settlement here is consistent with *Hyundai II* because certification is <u>not</u> being sought in the context of trial and there are several common issues among the class. (*See* Doc. 62 at 16-17 (discussing common issues).

### 8. No Notice to The Settlement Class Members Is Required Because the Settlement Provides for Injunctive Relief Only

Courts regularly approve injunctive relief-only settlements without formal notice to the class. *See, e.g., Stathakos v. Columbia Sportswear Co.*, No. 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) (granting settlement approval and stating: "In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required.") (collecting cases); *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, *7, 12 (S.D.N.Y. June 27, 2012) (finding "the benefits of the injunctive relief provided for in this settlement are substantial" and "[b]ecause this injunctive settlement specifically preserves and does not release the class members' monetary claims, notice to the class members is not required"). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice.").

Although a competing view is that Rule 23(e) requires notice of compromise or dismissal "in all cases under Rule 23,"[2] courts make exceptions to this rule where class members will not be prejudiced by a compromise or dismissal without notice. *See* Wright & Miller, § 1797, p. 366 & n. 50. Factors guiding courts on the issue of dispensing with Rule 23(e) notice are whether the terms of settlement extended near complete relief to the plaintiff class; whether there was any evidence of collusion amongst the parties; whether settlement negotiations were conducted at arms-length; and whether the cost of notice

---

[2] *See* 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1797, p. 365 (2d ed. 1986 & Supp.2003)9.

1  itself would jeopardize the settlement agreement. *See*, *e.9g.*, *Green v. American Express*
2  *Co.*, 200 F.R.D. 211 (S.D.N.Y. 2001). As explained in *Newberg on Class Actions*, "each
3  case must be examined on its own circumstances to determine whether dismissal with
4  court approval but without notice may violate the purpose of Rule 23(e). If the court
5  determines that dismissal of the class action will not benefit the individual representative
6  to the detriment of the class or prejudice the class by effectively foreclosing its members
7  from commencing a similar action, the court may dispense with notice." 3 Alba Conte &
8  Herbert B. Newberg, Newberg on Class Actions § 8:18, para. 8 (4th Ed. 2003).

9      Settlement of the instant case will not prejudice absent Settlement Class Members
10  who, as discussed above, ***retain their rights to sue for any damages*** they may have
11  incurred from the alleged practice. Settlement Class Members only waive injunctive or
12  declaratory relief that seeks to redress the practices at issue here —which are adequately
13  remedied by this Settlement. Thus, Settlement Class Members will receive the benefit of
14  the injunctive relief, but they are not releasing any statutory damages claims or claims for
15  monetary relief against Vega. Under these circumstances, it would be appropriate to
16  forego Rule 23(e)'s notice requirements. *Moreno v. San Francisco Bay Area Rapid*
17  *Transit Dist.*, 2019 WL 343472, at *3 (N.D. Cal. Jan. 28, 2019) ("Here, the terms of the
18  Settlement Agreement provide for injunctive relief only and class members ***do not release***
19  ***any claims regarding monetary relief. The Court therefore found that no notice was***
20  ***required***.") (emphasis added); *id.*, at *3-4 ("Although class members do not receive
21  monetary relief as a result of the settlement, the case was only certified for injunctive
22  relief purposes and class members are free to bring individual damages claims.
23  Accordingly, this factor weighs in favor of approving the settlement."); *Selby v. Principal*
24  *Mut. Life Ins. Co.*, 2003 WL 22772330, at *4 (S.D.N.Y. Nov. 21, 2003) (requiring no
25  notice where settlement "will not prejudice absent class members who . . . retain their
26  rights to sue for any damages they may have incurred from the alleged practice.").

27      Moreover, the settlement negotiations were conducted at arm's-length under the
28  guidance of the Hon. Margaret A. Nagle (Ret.) of JAMS. Both sides were represented by

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT

1  experienced counsel, and Plaintiffs' Counsel in particular have extensive experience
2  handling complex plaintiffs' class actions. (Perez Decl. ¶¶ 24-29, Ex. 2.)

3       Finally, the cost of notice to Settlement Class Members in this case would
4  jeopardize the settlement. In order to provide individual notice, absent Settlement Class
5  Members would first need to be identified. The mere process of determining which
6  individuals fall within the class would be laborious and costly, to say nothing of the cost
7  of notice itself. Nor is publication notice a superior option. Assuming such notice was
8  given and a large reaction from hopeful claimants ensued, the same arduous and costly
9  process of determining actual class membership would have to be conducted. These costs
10 would easily derail the settlement. *See Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972);
11 *D.H. Overmyer Co. v. Loflin, Inc.*, 440 F.2d 1213, 1215 (5th Cir.1971) (affirming long-
12 standing policy favoring settlement).

13      Accordingly, the Settlement Class will not and cannot be prejudiced by the
14 settlement and no notice is required. *See Johnson v. General Motors Corp.*, 598 F.2d 432,
15 433 (5th Cir. Ga. 1979) ("Although notice is not necessary to bind absent class members
16 in a 23(b)(2) class action seeking only injunctive and declaratory relief, due process does
17 require notice before the individual monetary claims of absent class members may be
18 barred."); *Chan v. Sutter Health Sacramento Sierra Region*, No.
19 LACV1502004JAKAGRX, 2016 WL 7638111, at *14 (C.D. Cal. June 9, 2016)
20 ("Because notice is optional for a Rule 23(b)(2) class ... and the Class Members' rights
21 will not be prejudiced by the Settlement Agreement, notice is not required for purposes of
22 the proposed Settlement Agreement.").

23      Consequently, notice to the Settlement Class Members of this proposed injunctive
24 relief settlement adds nothing of value and is not appropriate, let alone required.

25      **B.    The Court Should Grant Preliminary Approval of the Amended Class**
26            **Settlement**

27      Class action settlements must be approved by the court before the action can be
28 dismissed. Fed. R. Civ. P. 23(e)(1)(A). F.R.C.P. 23(e) provides that if the proposal would

bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and, (d) the proposal treats class members equitably relative to each other.

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally,* 3 Conte & Newberg, *Newberg on Class Actions,* § 7.20 (4th ed. 2002). Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc.,* 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016).

The Court must, however, assure itself that the settlement was not the product of "collusion" by checking for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015). The Ninth Circuit has identified three such signs: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant (the "*Bluetooth* Factors"). *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011). However, "for all these factors, 'subtle signs,' and red flags… the underlying question remains this: **Is the settlement fair**?"

1    *Volkswagen "Clean Diesel,"* 895 F.3d at 611 (emphasis added).

2          For the reasons discussed in detail below, this Settlement is fair and reasonable.

3    Plaintiffs' Counsel do not seek a disproportionate share of fees and there is no "reverter"

4    of unclaimed funds to Vega as the Settlement does not provide for the establishment of a

5    common fund, only injunctive relief. Additionally, the settlement was negotiated at arm's

6    length before a respected mediator. Further, by agreeing to resolve attorneys' fees

7    amicably, Vega's counsel averted the possibility that Plaintiffs' Counsel might apply for,

8    and receive, a much larger award, and thus avoided a "second major litigation" on

9    attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for

10   attorney's fees should not result in a second major litigation.").

11               **1.     The Settlement Was Negotiated at Arm's Length by**

12                   **Experienced Counsel**

13         The Settlement is the result of the Parties' extensive settlement negotiations

14   throughout the litigation and through formal mediation. There can be no dispute that the

15   Settlement was negotiated at arm's length and in good faith. *See In re Bluetooth Headset*

16   *Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (the "presence of a neutral mediator

17   [is] a factor weighing in favor of a finding of non-collusiveness"); *Kline v. Dymatize*

18   *Enterprises, LLC*, No. 15-CV-2348-AJB-RBB, 2016 WL 6026330, at *5 (S.D. Cal. Oct.

19   13, 2016) ("That the settlement was reached with the assistance of an experienced

20   mediator further suggest that the settlement is fair and reasonable.").

21         There is also no evidence here to suggest that the Settlement was negotiated in

22   haste or in the absence of information illuminating the value of Plaintiffs' claims. *Hanlon*

23   *v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The Parties engaged in settlement

24   discussions early on in the case. These discussions included several written letters and

25   phone calls to discuss possible terms for both an individual and class-based settlement.

26   The discussions continued while the parties conducted the litigation, which included

27   Vega's motion to dismiss and the exchange of documents and responses to written

28   discovery on fill testing and product labeling. There were also multiple conferences to

discuss discovery responses and resolve discovery disputes.

When the settlement discussions were unsuccessful, the Parties engaged Hon. Margaret A. Nagle (JAMS) to mediate the negotiations. The Parties attended a full day mediation with Judge Nagle (Ret.). When a settlement was not reached during the mediation, the Parties received a mediator's proposal, which included the injunctive terms that are a part of this Settlement. The Parties then engaged in additional discussions and negotiations through Judge Nagle (Ret.) to formalize the specific terms of her mediator's proposal. The post-mediation negotiations proved fruitful and, roughly two years after the litigation was filed, the Parties reached a settlement.

The Parties re-engaged in settlement discussions this year to address this Court's concerns over particular aspects of the Settlement. These discussions produced additional injunctive relief to benefit the class as well as modified provisions relating to attorneys' fees and payments to the Plaintiffs. (Perez Decl. ¶ 7.)

### 2.    The Extent of Discovery Completed Supports Preliminary Approval

Both before and after the action was filed, Plaintiffs thoroughly investigated and researched their claims, which allowed Plaintiffs' Counsel to better evaluate Vega's representations and omissions concerning the Products. Following the filing of the Complaint, the Parties exchanged enough discovery to make an informed judgment about the claims. For example, the Parties exchanged initial disclosures. (Perez Decl. ¶ 10.) Plaintiffs then served formal discovery requests seeking information and evidence concerning how Vega advertised the Products, how the Products were labeled, whether Vega received any customer complaints about the Products related to Plaintiffs' slack fill claim, etc. (*Id.*)

Vega served Plaintiffs with requests for production of documents and interrogatories regarding, among other things, the circumstances surrounding their purchase of the Products, documents related to their purchases, and documents to support their claims. (*Id.* at ¶ 11.) Plaintiffs' Counsel reviewed Vega's product labels and print

advertising among other things. (*Id.*) Vega also produced testing which it claimed demonstrated that the Products' contents settled during shipping.

### 3. The Proposed Amended Settlement Is Within the Range of Reasonableness Considering the Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Duration of Further Litigation

Injunctive relief only settlements are common and favored where, as here, individual class members are not releasing their claims for money damages and the injunctive relief addresses the allegedly unlawful practices. *See, e.g., Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2019 WL 343472, at *3-4 (N.D. Cal. Jan. 28, 2019) ("Although class members do not receive monetary relief as a result of the settlement, the case was only certified for injunctive relief purposes and class members are free to bring individual damages claims. Accordingly, this factor weighs in favor of approving the settlement."); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH BGS, 2014 WL 888665, at *2-4 (S.D. Cal. Mar. 5, 2014) ("The Settlement Agreement provides solely injunctive relief for the Class members" and "stops the allegedly unlawful practices" for at least three years, which "weighs in favor of granting final approval."); *Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *2-4 (N.D. Cal. May 4, 2015) (approving injunctive relief settlement forcing national juice-seller to repackage line of challenged products, omitting allegedly deceptive "all natural" labeling).

The proposed Settlement is well within the range of reasonableness, particularly in view of the risks of continued litigation. While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Action. *Officers for Justice*, 688 F.2d at 625 (in its evaluation, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice.").

First, Plaintiffs' Counsel understand there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case, as

some courts in the Ninth Circuit have dismissed claims brought by plaintiffs pursuant to consumer protection and labeling laws. *See Ebner v. Fresh Inc.*, Case No.: 13-56644, 2016 (9th Cir. March 17, 2016); *see also Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008).

       <u>Second</u>, Vega argued that nonfunctional slack-fill is, by definition, *unnecessary* empty space in a container (*see* Cal. Bus. & Prof. Code § 12606.2; *accord* 21 C.F.R. § 100.100(a)), and firmly maintained that not all empty space in its containers was unnecessary/nonfunctional. Vega argued that laws specifically recognize instances in which empty space in a container is permissible, including those defined by six safe harbors in the California and federal statutes.[3] Where one or more of these safe harbors apply, empty space in a container is not considered impermissible slack-fill, let alone misleading.

       Here, Vega invoked three of these safe harbor exceptions, any one of which could have defeated Plaintiffs' claims if proven to apply. For instance, federal and California slack-fill laws recognize that food products which settle during shipping and handling do not mislead consumers. *See supra* n.3. The FDA recognizes that product settling is a normal unavoidable process "for many types of foods," *including powders*, and is not itself misleading. *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957-01, 1993 WL 1564 (Jan. 6, 1993). Congress, in fact, did not intend the federal slack-fill statute to give rise to claims where the fill itself is not misleading and the space is caused by uncontrollable events, including settling. *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123, 64127 (Dec. 6, 1993).

       To this end, Vega argued that it could demonstrate that its Products are filled to the

---

[3] "Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:" (1) protecting package contents; (2) requirements of machines used for packaging; (3) unavoidable settling during shipping and handling; (4) performing a specific function; (5) food is packaged in reusable containers of value; and (6) inability to increase the level of fill or to further reduce the size of packaging. Cal. Bus. & Prof. Code § 12606.2; *accord* 21 C.F.R. § 100.100(a).

capacity permitted by the manufacturing process and the space in the container is created

by the powder settling. As such, Vega claimed that its Products fall squarely within at

least one of the governing safe harbor provisions. Although Plaintiffs challenged this safe

harbor argument in the context of Vega's motion to dismiss, the Court could not rule on

the merits of the argument given the governing 12(b)(6) standard. (Dkt. 38 [Opposition to

MTD] at 11-13.) Since then, Vega argued that its lab tests demonstrate that when the

Products are filled, the protein powder reaches the neck of the container.

Vega also argued that other lab tests demonstrate that pea protein powder settling,

over the course of a given product's life (product shipping included), will vary. To gauge

the amount a given product settles during shipment, Vega claims to have filled transparent

Nalgene bottles with protein powder and booked roundtrip shipping for them across the

North American continent; each bottle reportedly came back with a different fill level

even though each had been filled with the same amount of powder and traversed the same

shipping route.[4] Vega maintained (and maintains) that these lab tests confirm the Products

contained only functional (permissible) slack fill—and as a result, Vega argues that it had

(and has) a reasonable probability of prevailing on summary judgment if the litigation

were to continue.

If reproduced, these lab tests would present a significant risk to any class recovery

and weighed in favor of settlement. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378

(9th Cir. 1995) (affirming class settlement where strong defenses "may have adversely

terminated the litigation before trial"); *see also Knapp v. Art.com, Inc.*, 283 F. Supp. 3d

823, 832 (N.D. Cal. 2017) (approving settlement where "[c]ase law suggests that plaintiff

would have faced challenges in continuing to litigate" and "[i]n most situations, unless the

settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

expensive litigation with uncertain results."); *Kline v. Dymatize Enterprises, LLC*, 2016

WL 6026330, at *5 (S.D. Cal. Oct. 13, 2016) ("[W]hile confident in the merits of their

---

[4] Importantly, the exception under federal and California law applies to
unavoidable product settling regardless of the amount of such settlement. *See* 21 C.F.R. §
100.100(a)(3); Cal. Bus. & Prof. Code § 12606.2(c)(3).

1  case, Plaintiffs are cognizant of the inherent risks of lengthy litigation. Defendant

2  adamantly denies liability and Plaintiffs' ability to obtain class certification. The proposed

3  settlement adequately accounts for these risks.").

4       <u>Third</u>, there is risk that this case would be limited to the two Products the named

5  Plaintiffs purchased (i.e., small and medium chocolate-flavored Vega Protein & Greens

6  powders). (Dkt. 55 [SAC] ¶¶ 5, 9.) Vega consistently maintained that Plaintiffs lack

7  Article III standing to sue for any of the Products which Plaintiffs did not actually

8  purchase—an argument a number of courts have adopted in slack fill cases. *E.g., Jackson*

9  *v. Gen. Mills, Inc.*, 2019 WL 4599845, at *4 (S.D. Cal. Sept. 23, 2019) (plaintiff "lacks

10 standing to sue on behalf of purchasers of different kinds of cereal . . . [a] key issue in this

11 case is the degree to which slack-fill results from unavoidable settling of the cereal which

12 obviously will vary depending on the type, shape, and texture of the cereal…."); 

13 *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (finding

14 lack of standing for claims on unpurchased products).

15      However, Plaintiffs would cite to case law that suggests Plaintiffs could properly

16 sue for products that were not actually purchased by them as long as the products were

17 substantially similar to the products actually purchased by Plaintiffs. *See Davidson v.*

18 *Kimberly-Clark Corp.*, No. C 14-1783 PJH, 2014 WL 3919857, at *6 (N.D. Cal. Aug. 8,

19 2014) ("In general, courts permit plaintiffs to bring claims regarding products they did not

20 purchase where common misrepresentations are the crux of [the plaintiff's] case.")

21 (internal quotations omitted); *see also Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 935

22 (N.D. Cal. 2014).

23      <u>Fourth</u>, if this case were to continue in litigation without a settlement, Vega would

24 also likely argue that a class action should not be certified due to potential individualized

25 issues as to proof of purchase of the products, purchasing preferences, and the amount of

26 appropriate damages for each class member. Plaintiffs, on the other hand, would argue

27 that a class action could be maintained and that consumer receipts showing proof of

28 purchase are not required and that to hold otherwise would be to effectively preclude

1    many consumer class actions.

2    <u>Fifth</u>, even complete success at trial would likely leave class members outside

3    California uncompensated. While Plaintiffs would seek certification of a nationwide class,

4    under established precedent, it is far from certain that the claims of the nationwide

5    Settlement Class could ever be adjudicated in a single forum and trial. *See, e.g., Mazza,*

6    666 F.3d at 589-94 (9th Cir. 2012) (material variations in state unfair competition and

7    unjust enrichment laws make nationwide class treatment inappropriate); *Warner v. Toyota*

8    *Motor Sales, U.S.A., Inc.*, 2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016)

9    ("Nationwide class certification under the laws of multiple states can be very difficult for

10    plaintiffs' counsel.") (citing *Mazza*). The alternative would be repeat litigation in multiple

11    forums across the country, and such litigation would be exceedingly costly, inherently

12    risky, and continue for years. By contrast, these constraints do not apply to this

13    settlement—particularly because it provides injunctive relief without waiving claims for

14    money damages. "For purposes of a settlement class, differences in state law do not

15    necessarily, or even often, make a class unmanageable. . . . *Hyundai* made clear that it

16    generally is not legal error to forego a choice-of-law analysis in a settlement-class

17    predominance inquiry." *Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020).

18        In sum, Plaintiffs and their counsel carefully balanced the risks of continuing to

19    engage in protracted and contentious litigation against the benefits to the Settlement Class,

20    including the stipulated injunctive relief, and believe that the injunctive relief settlement is

21    in the best interests of Settlement Class Members. Due to the costs and risks to both sides,

22    this injunctive relief settlement presents a fair and reasonable alternative to continuing to

23    pursue the action as a class action for the alleged violations of the various state consumer

24    protection and labeling laws. This Settlement would "avoid[] the complexity, delay, risk

25    and expense of continuing with the litigation and will produce a prompt, certain, and

26    substantial recovery for the [p]laintiff class." *Curtis-Bauer v. Morgan Stanley & Co., Inc.*,

27    2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008).

28

1
2

### 4.    The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs

3    At the conclusion of a successful class action, the plaintiff may apply to the Court

4    for an award of "reasonable attorneys' fees and non-taxable costs that are authorized by

5    law or the parties' agreement." Fed. R. Civ. P. 23(h). In considering the fee application,

6    courts must ensure that the fees awarded are reasonable. *See In re Bluetooth*, 654 F.3d at

7    941. In their evaluation, however, district courts must account for the fact that "the parties

8    are compromising to avoid litigation." *Laguna v. Coverall North America*, 753 F.3d 918,

9    922 (9th Cir. 2014) *vac'd as moot*, 2014 U.S. App. LEXIS 21950 (9th Cir. Nov. 20,

10   2014). Accordingly, "the district court need not inquire into the reasonableness of the fees

11   even at the high end with precisely the same level of scrutiny as when the fee amount is

12   litigated." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003)). This

13   standard is consistent with the strong policy discouraging a "second major litigation"

14   arising from a request for attorneys' fees. *Hensley*, 461 U.S. at 437 ("Ideally, of course,

15   litigants will settle the amount of a fee").

16   Here, the agreed-upon attorneys' fees and expenses in the amount of $220,000 (*see*

17   Settlement Agreement, Terms, ¶ F) is the product of a non-collusive adversarial

18   negotiation following a mediation with the Hon. Margaret A. Nagle (Ret.). The en banc

19   court in *Hyundai II* recently found that separate settlement and fee negotiations provide

20   another indication of non-collusiveness. *Hyundai II,* 926 F.3d at 568.

21   By agreeing to resolve attorneys' fees amicably, Vega's counsel averted the

22   possibility that Plaintiffs' Counsel might apply for, and receive, a much larger award.

23   Accordingly, this Court's review of the reasonableness of the fee request should take into

24   consideration the Parties' bargain, including the important fact that the attorneys' fees,

25   negotiated well after the Class relief had been finalized, are discrete from the funds that

26   have been designated as relief for the Class. Plaintiffs will file a formal motion for the

27   negotiated attorneys' fees and costs once preliminary approval of the Settlement is

28   granted.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT

## V.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement. Accordingly, Plaintiffs move the Court to preliminarily approve the Settlement Agreement; conditionally certify the proposed Settlement Class, and set a hearing date and briefing schedule for final Settlement approval and Plaintiffs' fee and expense application.

Dated:  April 9, 2021                              Respectfully submitted,


                                          By: /s/ Raul Perez
                                          Raul Perez
                                          Steven R. Weinmann
                                          Tarek H. Zohdy
                                          Cody R. Padgett
                                          **CAPSTONE LAW APC**

                                          Attorneys for Plaintiffs Rebecca Padilla and
                                          Kimberly Owens